

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:12 *CR 418-001* |
| | ) | |
| v. | ) | Count 1: 18 U.S.C. § 371 |
| | ) | (Conspiracy to Violate the Anti- |
| TYCO VALVES & CONTROLS | ) | Bribery Provisions of the Foreign |
| MIDDLE EAST, INC., | ) | Corrupt Practices Act, |
| | ) | 15 U.S.C. § 78dd-2) |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLEA AGREEMENT

The United States of America, by and through the Fraud Section of the Criminal Division of the United States Department of Justice and the United States Attorney's Office for the Eastern District of Virginia, (collectively the "Department of Justice" or the "Department"), and the defendant, Tyco Valves & Controls Middle East, Inc. (the "Defendant"), by and through its undersigned attorneys, and through its authorized representative, pursuant to authority granted by Defendant's Board of Directors, hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

### The Defendant's Agreement

1.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant agrees to waive its right to grand jury indictment and its right to challenge venue in the District Court for the Eastern District of Virginia, and to plead guilty to a one count Information charging the Defendant with

one count of conspiracy to commit offenses against the United States in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-2. The Defendant further agrees to persist in that plea through sentencing and, as set forth below, to cooperate fully with the Department in its investigation into all matters related to the conduct charged in the Information.

2.      The Defendant understands and agrees that this Agreement is between the Department and the Defendant and does not bind any other division or section of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority. Nevertheless, the Department will bring this Agreement and the cooperation of the Defendant, its direct or indirect affiliates, subsidiaries, and parent corporation, to the attention of other prosecuting authorities or other agencies, if requested by the Defendant.

3.      The Defendant agrees that this Agreement will be executed by an authorized corporate representative. The Defendant further agrees that a resolution duly adopted by Defendant's Board of Directors in the form attached to this Agreement as Exhibit 1, or in similar form, represents that the signatures on this Agreement by Defendant and its counsel are authorized by Defendant's Board of Directors, on behalf of the Defendant.

4.      The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

5.      The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

     a.      to plead guilty as set forth in this Agreement;

     b.      to abide by all sentencing stipulations contained in this Agreement;

     c.     to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter;

     d.     to commit no further crimes;

     e.     to be truthful at all times with the Court;

     f.     to pay the applicable fine and special assessment; and

     g.     to work with its parent corporation in fulfilling the obligations described in the Corporate Compliance Program, attached as Exhibit 2.

6.     The Defendant agrees that in the event the Defendant sells, merges, or transfers all or substantially all of its business operations as they exist as of the date of this Agreement, whether such sale(s) is/are structured as a stock or asset sale, merger, or transfer, the Defendant shall include in any contract for sale, merger, or transfer a provision fully binding the purchaser(s) or any successor(s) in interest thereto to the obligations described in this Agreement.

7.     The Defendant agrees to continue to cooperate fully with the Department, the Federal Bureau of Investigation (the "FBI"), and the U.S. Securities and Exchange Commission (the "SEC") in a manner consistent with applicable law and regulations. At the request of the Department, the Defendant shall also cooperate fully with foreign law enforcement authorities and agencies and the Multilateral Development Banks ("MDBs"). The Defendant shall, to the extent consistent with the foregoing, truthfully disclose to the Department all factual information not protected by a valid claim of attorney-client privilege or work product doctrine protection with respect to the activities of the Defendant and its affiliates, its present and former directors, officers, employees, agents, consultants, contractors, and subcontractors, concerning all matters relating to corrupt payments to foreign public officials or to employees of private customers or

concerning related internal controls or books and records violations about which the Defendant has any knowledge and about which the Department, the FBI, the SEC, or, at the request of the Department, any foreign law enforcement authorities and agencies and MDBs, shall inquire. This obligation of truthful disclosure includes the obligation of the Defendant to provide to the Department, upon request, any non-privileged or non-protected document, record, or other tangible evidence relating to such corrupt payments to foreign public officials or to employees of private customers about which the aforementioned authorities and agencies shall inquire of the Defendant, subject to the direction of the Department.

8.      The Defendant agrees that any fine or restitution imposed by the Court will be due and payable within ten (10) business days of sentencing, and the Defendant will not attempt to avoid or delay payments. The Defendant further agrees to pay the Clerk of the Court for the United States District Court for the Eastern District of Virginia the mandatory special assessment of $400 within ten (10) business days from the date of sentencing.

9.      The Defendant agrees that if the company, its parent corporation, or any of its direct or indirect affiliates or subsidiaries issues a press release or holds a press conference in connection with this Agreement, the Defendant shall first consult with the Department to determine whether (a) the text of the release or proposed statements at any press conference are true and accurate with respect to matters between the Department and the Defendant; and (b) the Department has no objection to the release or statement. Statements at any press conference concerning this matter shall be consistent with this press release.

## The United States' Agreement

10.     In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the Department agrees it will not file additional

criminal charges against the Defendant or any of its direct or indirect affiliates, subsidiaries, or its parent corporation, Tyco International, Ltd., relating to (a) any of the conduct described in the Statement of Facts, or (b) information disclosed by the Defendant or its parent company, Tyco International, Ltd., to the Department prior to the date of this Agreement. This paragraph does not provide any protection against prosecution for any corrupt payments, false accounting, or failure to implement internal controls or circumvention of internal controls, if any, made in the future by the Defendant or by any of its officers, directors, employees, agents or consultants, whether or not disclosed by the Defendant pursuant to the terms of this Agreement. This Agreement does not close or preclude the investigation or prosecution of any natural persons, including any officers, directors, employees, agents, or consultants of the Defendant, who may have been involved in any of the matters set forth in the Information, Statement of Facts, or in any other matters.

## Factual Basis

11.     The Defendant is pleading guilty because it is guilty of the charge contained in the Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information are true and correct, that it is responsible for the acts of its present and former officers and employees described in the Statement of Facts incorporated herein, and that the Statement of Facts accurately reflects the Defendant's criminal conduct.

## Defendant's Waiver of Rights, Including the Right to Appeal

12.     Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly warrants that it has discussed these rules with its counsel and understands them. Solely to the

extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against it for any purpose in any U.S. federal criminal proceeding if, even though the Department has fulfilled all of its obligations under this Agreement and the Court has imposed the agreed-upon sentence, the Defendant nevertheless withdraws its guilty plea.

13.    The Defendant is satisfied that the Defendant's attorney has rendered effective assistance. The Defendant understands that by entering into this agreement, Defendant surrenders certain rights as provided in this agreement. The Defendant understands that the rights of criminal defendants include the following: (a) the right to plead not guilty and to persist in that plea; (b) the right to a jury trial; (c) the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings; and (d) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses. The Defendant also understands that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the Defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described below (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The Defendant also hereby waives all rights, whether asserted directly or

by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a. The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Department is free to take any position on appeal or any other post-judgment matter.

## Penalty

14.     The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, Title 18, United States Code, Section 3571(c)(3), (d); five years' probation, Title 18, United States Code, Section 3561(c)(1); and a mandatory special assessment of $400, Title 18, United States Code, Section 3013(a)(2)(B).

## Sentencing Recommendation

15.     The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines. The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in 18

U.S.C. § 3553(a).  The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy the applicable burden of proof.  The Defendant also understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in paragraph 17.

16.     The Department and the Defendant agree that a faithful application of the United States Sentencing Guidelines (U.S.S.G.) to determine the applicable fine range yields the following analysis:

a.      The 2011 U.S.S.G. are applicable to this matter.

b.      Offense Level.  Based upon U.S.S.G. § 2C1.1, the total offense level is 30, calculated as follows:

| | | |
|---|---|---|
| (a)(2)  Base Offense Level | | 12 |
| (b)(1)  Multiple Bribes | | +2 |
| (b)(2)  Value of benefit received more than $1,000,000 | | +16 |
| **TOTAL** | | 30 |

c.      Base Fine.  Based upon U.S.S.G. § 8C2.4(a)(1), the base fine is $10,500,000 (the fine indicated in the Offense Level Fine Table)

d.      Culpability Score.  Based upon U.S.S.G. § 8C2.5, the culpability score is 6, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(5) | the organization had 10 or more employees and an individual within substantial authority personnel participated in, condoned, or was willfully ignorant of the offense | +1 |
| (g)(1) | The organization, prior to imminent threat of disclosure or government investigation and within a reasonably prompt time after becoming aware of the offense, reported the offense to appropriate governmental authorities, fully cooperated in the | |

> investigation, and clearly demonstrated recognition
> and affirmative acceptance of responsibility for its
> criminal conduct                                                    - 5

**TOTAL**                                                                          1

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $10,500,000 |
| Multipliers | 0.20(min)/0.40 (max) |
| Fine Range | $2,100,000 / $4,200,000 |

17.    Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Department and the Defendant agree that the following represents the appropriate disposition of the case:

a.    Fine.  The parties agree that the imposition of a fine within the U.S.S.G. range – in the amount of $2,100,000 to $4,200,000 – is appropriate in this case.  The Department recommends that the Court impose a fine at the bottom of the range – $2,100,000.

b.    Mandatory Special Assessment.  The Defendant shall pay to the Clerk of the Court for the United States District Court for the Eastern District of Virginia within ten (10) business days of the time of sentencing the mandatory special assessment of $400 per count.

18.    The parties further agree, with the permission of the Court, to waive the requirement of a Pre-Sentence Investigation report pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii), based on a finding by the Court that the record contains information sufficient to enable the Court to meaningfully exercise its sentencing power.  The parties agree,

however, that in the event the Court orders the preparation of a pre-sentence report prior to sentencing, such order will not affect the agreement set forth herein.

19.     The parties further agree to ask the Court's permission to combine the entry of the plea and sentencing into one proceeding, and to conduct the plea and sentencing hearings of the Defendant in one proceeding. The parties agree, however, that in the event the Court orders that the entry of the guilty plea and sentencing hearing occur at separate proceedings, such an order will not affect the agreement set forth herein.

20.     This agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

21.     In the event the Court directs the preparation of a Pre-Sentence Investigation report, the Department will fully inform the preparer of the pre-sentence report and the Court of the facts and law related to the Defendant's case.

## Breach of Agreement

22.     The Defendant agrees that if it breaches this Agreement, commits any federal crime subsequent to the date of this Agreement, or has provided or provides deliberately false, incomplete, or misleading information in connection with this Agreement, the Department may, in its sole discretion, characterize such conduct as a breach of this Agreement. In the event of

such a breach, (a) the Department will be free from its obligations under the Agreement and may take whatever position it believes appropriate as to the sentence; (b) the Defendant will not have the right to withdraw the guilty plea; (c) the Defendant shall be fully subject to criminal prosecution for any other crimes that it has committed or might commit, if any, including perjury and obstruction of justice; and (d) the Department will be free to use against the Defendant, directly and indirectly, in any criminal or civil proceeding any of the information or materials provided by the Defendant pursuant to this Agreement, as well as the admitted Statement of Facts.

23.     In the event of a breach of this Agreement by the Defendant, if the Department elects to pursue criminal charges, or any civil or administrative action that was not filed as a result of this Agreement, then:

a.     The Defendant agrees that any applicable statute of limitations is tolled between the date of the Defendant's signing of this Agreement and the discovery by the Department of any breach by the Defendant plus one year; and

b.     The Defendant gives up all defenses based on the statute of limitations (as described in Paragraph 13), any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement.

## Complete Agreement

24.     This document states the full extent of the agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

AGREED:

FOR TYCO VALVES & CONTROLS MIDDLE EAST, INC.:

Date: _____          By: _____
                                    David Dunbar
                                    President – Tyco Flow Control

Date: _9/20/12_                By: _____
                                    MARTIN J. WEINSTEIN
                                    Willkie Farr & Gallagher LLP
                                    Counsel for Tyco Valves &
                                    Controls Middle East, Inc.

FOR THE DEPARTMENT OF JUSTICE:

Neil H. McBride                         Denis J. McInerney
United States Attorney                  Chief, Fraud Section
                                        Criminal Division
                                        Department of Justice

By: _____      By: _____
    Charles F. Connolly                 KATHLEEN M HAMANN
    Assistant United States Attorney     Trial Attorney, Fraud Section

                                   By: _____
                                        DANIEL S. KAHN
                                        Trial Attorney, Fraud Section

AGREED:

FOR TYCO VALVES & CONTROLS MIDDLE EAST, INC.:

Date: _9/21/12_                           By: _____

                                                   David Dunbar
                                                   President – Tyco Flow Control

Date: _____                        By: _____

                                                   MARTIN J. WEINSTEIN
                                                   Willkie Farr & Gallagher LLP
                                                   Counsel for Tyco Valves &
                                                   Controls Middle East, Inc.

FOR THE DEPARTMENT OF JUSTICE:

       Neil H. McBride                              Denis J. McInerney
       United States Attorney                        Chief, Fraud Section
                                            Criminal Division
                                            Department of Justice

By: _____       By: _____
       Charles F. Connolly                          KATHLEEN M HAMANN
       Assistant United States Attorney             Trial Attorney, Fraud Section

                                              By: _____
                                                   DANIEL S. KAHN
                                                   Trial Attorney, Fraud Section

## OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Tyco Valves & Controls Middle East, Inc. (the "Defendant"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Defendant, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Defendant. Counsel fully advised me of the rights of the Defendant, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Defendant. I have advised and caused outside counsel for the Defendant to advise the Board of Directors fully of the rights of the Defendant, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Defendant, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am President of Tyco Flow Control, a parent corporation of the Defendant, and that I have been duly authorized by the Defendant to execute this Agreement on behalf of the Defendant.

Date: September 20, 2012

TYCO VALVES & CONTROLS MIDDLE EAST, INC.

By: _____

David Dunbar
President – Tyco Flow Control

2

## CERTIFICATE OF COUNSEL

I am counsel for Tyco Valves & Controls Middle East, Inc. (the "Defendant") in the matter covered by this Agreement. In connection with such representation, I have examined the relevant documents and have discussed the terms of this Agreement with the Defendant's Board of Directors. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Defendant has been duly authorized to enter into this Agreement on behalf of the Defendant and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Defendant and is a valid and binding obligation of the Defendant. Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the General Counsel of Tyco International, Ltd. I have fully advised them of the rights of the Defendant, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Defendant to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date:  September 20, 2012

By:  _____
MARTIN J. WEINSTEIN
Willkie Farr & Gallagher LLP
Counsel for Tyco Valves & Controls
Middle East, Inc.

3

**EXHIBIT 1**

**CERTIFICATE OF CORPORATE RESOLUTIONS**

A copy of the executed Certificate of Corporate Resolutions is annexed hereto as "Exhibit 1."

4

**UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS
OF TYCO VALVES & CONTROLS MIDDLE EAST, INC.**

The undersigned, being all of the members of the Board of Directors of Tyco Valves & Controls Middle East, Inc. ("TVC ME"), a Delaware corporation, hereby consent to the adoption of the following resolutions taking or authorizing the actions specified therein:

WHEREAS, the Board of Directors of TVC ME has been informed by its counsel of a proposed settlement with the United States Department of Justice (the "Department") in relation to certain matters which have been under investigation by the Department (the "Proposed Settlement"), and the key terms of the Proposed Settlement have been explained or distributed to the members of the Board;

WHEREAS, the Proposed Settlement contemplates:

(1)     TVC ME, a wholly-owned subsidiary of Tyco International Ltd. ("TIL"), pleading guilty to certain crimes pursuant to a plea agreement with the Department (the "Plea Agreement");

(2)     the Department and TIL entering into a non-prosecution agreement (the "Non-Prosecution Agreement");

(3)     the Department and TIL agreeing that the Company will pay a fine of $13.68 million pursuant to the Non-Prosecution Agreement;

(4)     the Department and TVC-ME agreeing to recommend to the court a fine at the low end of the United States Sentencing Guidelines range of $2.1 million to $4.2 million as appropriate under the circumstances and that the amount of this fine will be offset against the amount to be paid by TIL pursuant to the Non-Prosecution Agreement;

(5)     the court retaining under the law the final determination of the fine to be imposed under the Plea Agreement; and

(6)     the imposition of commitments set out in the Non-Prosecution Agreement and the Plea Agreement on TIL and TVC ME.

**NOW, THEREFORE, BE IT:**

RESOLVED, that the key terms of the Proposed Settlement that have been explained or distributed to the members of the Board are hereby approved and the Proposed Settlement is hereby agreed to in principle by TVC ME;

FURTHER RESOLVED, that David Dunbar, President of Tyco Flow Control, is authorized and directed to execute and deliver the Plea Agreement on behalf of TVC ME, and such other documents as are necessary to effect the

Proposed Settlement, and to take such other and further actions as may be approved by the Board of Directors of the Company or any authorized committee or subcommittee thereof, as applicable, to consummate the Proposed Settlement and the resolution of the investigation of past improper payments and practices referenced above, including appearing before the United States District Court for the Eastern District of Virginia, to enter a plea of guilty on behalf of TVC ME and accept the sentence of the Court.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

This written consent may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.  Facsimile or scanned counterparts to this unanimous written consent shall be acceptable and binding.

**BOARD OF DIRECTORS:**

David Dunbar

Pat D'Orsi

Gary Haire

3

This written consent may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument. Facsimile or scanned counterparts to this unanimous written consent shall be acceptable and binding.

### BOARD OF DIRECTORS:

David Dunbar

Pat D'Orsi

Gary Haire

    This written consent may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.  Facsimile or scanned counterparts to this unanimous written consent shall be acceptable and binding.


**BOARD OF DIRECTORS:**


_____
David Dunbar


_____
Pat D'Orsi


_____
Gary Haire

EXHIBIT 2

## CORPORATE COMPLIANCE PROGRAM

In order to address any deficiencies in its internal controls, compliance program, policies, and procedures regarding compliance with the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1, *et seq.,* and other applicable anti-corruption laws, Tyco Valves & Controls Middle East, Inc. (the "Company") agrees to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its existing internal controls, policies, and procedures.

Where necessary and appropriate, the Company agrees to adopt new or to modify existing internal controls, policies, and procedures in order to ensure that it maintains: (a) a system of internal accounting controls designed to ensure that the Company makes and keeps fair and accurate books, records, and accounts; and (b) a rigorous anti-corruption compliance program, policies, and procedures designed to detect and deter violations of the FCPA and other applicable anti-corruption laws. At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of the Company's existing internal controls, compliance program, policies, and procedures:

### *High-Level Commitment*

1.      The Company will ensure that its directors and senior management provide strong, explicit, and visible support and commitment to its corporate policy against violations of the anti-corruption laws and its code of conduct.

### *Policies and Procedures*

2.      The Company will develop and promulgate a clearly articulated and visible corporate policy against violations of the FCPA and other applicable foreign law counterparts

(collectively, the "anti-corruption laws,"), which policy shall be memorialized in writing and referenced in the Company's code of conduct.

　　　　3.　　　The Company will develop and promulgate compliance policies and procedures designed to reduce the prospect of violations of the anti-corruption laws and the Company's code of conduct, and the Company will take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violation of the anti-corruption laws by personnel at all levels of the Company. These anti-corruption policies and procedures shall apply to all directors, officers, and employees and, where necessary and appropriate, outside parties acting on behalf of the Company in a foreign jurisdiction, including but not limited to, agents and intermediaries, consultants, representatives, distributors, teaming partners, contractors and suppliers, consortia, and joint venture partners (collectively, "agents and business partners"). The Company shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company. Such policies and procedures shall address:

　　　　　　　　a.　　　gifts;

　　　　　　　　b.　　　hospitality, entertainment, and expenses;

　　　　　　　　c.　　　customer travel;

　　　　　　　　d.　　　political contributions;

　　　　　　　　e.　　　charitable donations and sponsorships;

　　　　　　　　f.　　　facilitation payments; and

　　　　　　　　g.　　　solicitation and extortion.

2

4.     The Company will ensure that it has a system of financial and accounting procedures, including a system of internal controls, reasonably designed to ensure the maintenance of fair and accurate books, records, and accounts. This system should be designed to provide reasonable assurances that:

a.     transactions are executed in accordance with management's general or specific authorization;

b.     transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets;

c.     access to assets is permitted only in accordance with management's general or specific authorization; and

d.     the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

*Periodic Risk-Based Review*

5.     The Company will develop these compliance policies and procedures on the basis of a risk assessment addressing the individual circumstances of the Company, in particular the foreign bribery risks facing the Company, including, but not limited to, its geographical organization, interactions with various types and levels of government officials, industrial sectors of operation, involvement in joint venture arrangements, importance of licenses and permits in the Company's operations, degree of governmental oversight and inspection, and volume and importance of goods and personnel clearing through customs and immigration.

3

6.    The Company shall review its anti-corruption compliance policies and procedures no less than annually and update them as appropriate to ensure their continued effectiveness, taking into account relevant developments in the field and evolving international and industry standards.

### Proper Oversight and Independence

7.    The Company will assign responsibility to one or more senior corporate executives of the Company for the implementation and oversight of the Company's anti-corruption compliance program, policies, and procedures. Such corporate official(s) shall have direct reporting obligations to independent monitoring bodies, including internal audit, the Company's Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

### Training and Guidance

8.    The Company will implement mechanisms designed to ensure that its anti-corruption policies and procedures are effectively communicated to all directors, officers, employees, and, where necessary and appropriate, agents and business partners. These mechanisms shall include: (a) annual training for all directors and officers, all employees in positions of leadership or trust, positions that require such training (e.g., internal audit, sales, legal, compliance, finance), or positions that otherwise pose a corruption risk to the Company, and, where necessary and appropriate, agents and business partners; and (b) biannual certifications by all such directors, officers, and relevant employees certifying compliance with

4

training requirements and, where necessary and appropriate, similar certifications by its agents and business partners, certifying that they will comply with anti-corruption laws.

9.    The Company will maintain, or where necessary establish, an effective system for providing guidance and advice to directors, officers, employees, and, where necessary and appropriate, agents and business partners, on complying with the Company's anti-corruption compliance program, policies, and procedures, including when they need advice on an urgent basis or in any foreign jurisdiction in which the Company operates.

*Internal Reporting and Investigation*

10.    The Company will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, directors, officers, employees, and, where appropriate, agents and business partners concerning violations of the anti-corruption laws or the Company's anti-corruption policies and procedures.

11.    The Company will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of the anti-corruption laws or the Company's anti-corruption policies and procedures.

*Enforcement and Discipline*

12.    The Company will implement mechanisms designed to effectively enforce its policies and procedures, including appropriately incentivizing compliance and disciplining violations.

13.    The Company will institute appropriate disciplinary procedures to address, among other things, violations of the anti-corruption laws and the Company's anti-corruption

5

compliance program, policies, and procedures by the Company's directors, officers, and employees. Such procedures should be applied consistently and fairly, regardless of the position held by, or perceived importance of, the director, officer, or employee. The Company shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, compliance program, policies, and procedures and making modifications necessary to ensure the overall anti-corruption compliance program is effective.

*Third-Party Relationships*

14.     The Company will institute appropriate risk-based due diligence and compliance requirements pertaining to the retention and oversight of all agents and business partners, including:

   a.     properly documented risk-based due diligence pertaining to the hiring and appropriate and regular oversight of agents and business partners;

   b.     informing agents and business partners of the Company's commitment to abiding by anti-corruption laws, and of the Company's anti-corruption compliance program, policies, and procedures; and

   c.     seeking a reciprocal commitment from agents and business partners.

15.     Where necessary and appropriate, the Company will include standard provisions in agreements, contracts, compliance certifications, and renewals thereof with all agents and business partners that are reasonably calculated to prevent violations of the anti-corruption laws, which may, depending upon the circumstances, include: (a) anti-corruption representations and

6

undertakings relating to compliance with the anti-corruption laws; (b) rights to conduct audits of the books and records of the agent or business partner related to their business with the Company to ensure compliance with the foregoing; and (c) rights to terminate an agent or business partner as a result of any breach of the anti-corruption laws and regulations, or the representations and undertakings related to such matters.

*Mergers and Acquisitions*

16.     The Company will develop and implement policies and procedures for mergers and acquisitions requiring that the Company conduct appropriate risk-based due diligence on potential new business entities, including appropriate FCPA and anti-corruption due diligence by legal, accounting, and compliance personnel.  If the Company discovers any corrupt payments or inadequate internal controls as part of its due diligence of newly acquired entities or entities merged with the Company, it shall report such conduct to the Department.

17.     The Company will ensure that the Company's compliance program, policies, and procedures regarding the anti-corruption laws apply as quickly as is practicable to newly acquired businesses or entities merged with the Company and will promptly:

a.     train the directors, officers, employees, agents, and business partners consistent with Paragraph 8 above on the anti-corruption laws and the Company's compliance program, policies, and procedures regarding anti-corruption laws; and

b.     where warranted, conduct an FCPA-specific audit of all newly acquired or merged businesses as quickly as practicable.

*Monitoring and Testing*

18.    The Company will conduct periodic reviews and testing of its anti-corruption compliance program, policies, and procedures designed to evaluate and improve their effectiveness in preventing and detecting violations of anti-corruption laws and the Company's anti-corruption program, policies, and procedures, taking into account relevant developments in the field and evolving international and industry standards.